UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 24-165

JEFFREY PAUL VAPPIE, II                     SECTION: D (5)
LATOYA CANTRELL

ORDER AND REASONS

Before the Court is the Government's Motion to Admit Intrinsic Evidence or, Alternatively, Notice of Intent to Introduce "Other Act" Evidence Pursuant to Rule 404(b) of the Federal Rules of Evidence.[1] Defendants, Latoya Cantrell and Jeffrey Paul Vappie, II, each oppose the Motion,[2] and the Government has filed a Reply.[3]

The Court heard oral argument on the Government's Motion on May 19, 2026, after which the Court took the matter under advisement.[4]

After careful consideration of the parties' memoranda, the record, the applicable law, and the arguments made by counsel during the May 19, 2026 oral argument, the Motion is **GRANTED in part and DENIED in part.**

I.    FACTUAL AND PROCEDURAL BACKGROUND[5]

The Government alleges that beginning at a time unknown, but no later than October 2021, and continuing until on or about June 29, 2024, defendants, Latoya Cantrell and Jeffrey Paul Vappie, II, devised a scheme "to defraud and to obtain

---

[1] R. Doc. 85.
[2] R. Docs. 91 & 92.
[3] R. Doc. 94.
[4] R. Doc. 96.
[5] The Court recites the Factual Background as alleged in the superseding indictment (R. Doc. 34).

money and property from the City of New Orleans and [the New Orleans Police Department] by means of materially false and fraudulent pretenses, representations, and promises" by converting to their personal use money and property to which they were not entitled and then concealing the scheme.[6]  Cantrell was elected in November 2017 to serve a four-year term as the Mayor of the City of New Orleans, and was reelected for another four-year term in November 2021.[7]  Vappie was a New Orleans Police Department ("NOPD") officer from around April 1997 until about June 29, 2024.[8]  As Mayor, Cantrell received physical protection from the NOPD's Executive Protection Unit ("EPU").[9]  The Government alleges that Vappie was a member of the EPU and was assigned to provide protection for Cantrell from about May 23, 2021 to November 9, 2022, and again from about June 22, 2023 to about April 22, 2024.[10]

The Government alleges that beginning no later than October 2021, Vappie and Cantrell developed a personal and intimate relationship, and exploited their public positions to implement a scheme to defraud the City of New Orleans and the NOPD by engaging in personal activities while Vappie claimed to be on duty, and was paid for, providing protection for Cantrell.[11]  The Government alleges that Cantrell and Vappie arranged for Vappie to accompany Cantrell when she traveled outside the State of Louisiana on official business, which cost the City of New Orleans over $70,000. [12]  The Government also alleges that Vappie and Cantrell spent time

---

[6] R. Doc. 34 at p. 13.
[7] *Id*. at p. 1.
[8] *Id*. at p. 6.
[9] *Id*. at p. 2.
[10] *Id*.
[11] *Id*.
[12] *Id*.  *See Id*. at pp. 8–10.

together at the Pontalba Apartment, an apartment located in the French Quarter of New Orleans that was owned by the City of New Orleans and which the Mayor had access to up until March 2024.[13]  The Government alleges that Cantrell and Vappie attempted to distract and impede inquiries and investigations, including a federal grand jury investigation, into their conduct by using the encrypted messaging platform WhatsApp,[14] intimidating and punishing subordinates, lying to colleagues and advisors, making false public pronouncements, harassing a private individual who took pictures of them in public together, deleting electronic evidence, making false statements to federal law enforcement agents, authoring an affidavit signed under oath with a penalty of perjury containing false information, and testifying falsely while under oath before a federal grand jury.[15]

On July 19, 2024, Vappie was charged in an eight-count indictment with seven counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of making false statements, in violation of 18 U.S.C. § 1001(a)(2).[16]  On August 15, 2025, a grand jury in the United States District Court for the Eastern District of Louisiana returned an 18-count superseding indictment against Cantrell and Vappie.[17]  Cantrell and Vappie are charged with a conspiracy to defraud the City of New Orleans and the NOPD, in violation of 18 U.S.C. § 271.[18]  The Government alleges that Vappie submitted false

---

[13] *Id*. at p. 10.
[14] The superseding indictment explains that WhatsApp is a "free, end-to-end encrypted cellular phone messaging application that allowed users to send text, voice messages, and video messages, make voice and video calls, and share images, documents, user locations, and other content.  WhatsApp was known for its security features." *Id*. at p. 7.
[15] *Id*. at pp. 2–3 & 7.
[16] R. Doc. 1.
[17] R. Doc. 34.
[18] *Id*. at pp. 1–25.

timecards to the NOPD, claiming to be on duty when he was engaged in personal activities with Cantrell.[19]  The Government also alleges that Vappie lied to FBI agents on July 14, 2023 about the nature of his relationship with Cantrell,[20] that Cantrell provided an affidavit in response to a grand jury subpoena issued on July 18, 2023 that contained multiple materially false representations,[21] and that Cantrell gave false testimony to a federal grand jury on or about June 28, 2024 regarding the documents produced in response to the subpoena.[22]

Vappie is also charged with twelve counts of wire fraud, in violation of 18 U.S.C. § 1343,[23] and one count of making false statements to law enforcement authorities, in violation of 18 U.S.C. § 1001.[24]  Cantrell is likewise charged with six counts of wire fraud,[25] one count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(1), and two counts of making a false declaration before a grand jury, in violation of 18 U.S.C. § 1623.[26]

According to the superseding indictment, special agents with the FBI served Vappie with a subpoena issued by a federal grand jury sitting in the Eastern District of Louisiana on July 14, 2023, which required the production of, among other things, correspondence with Cantrell, gifts Vappie gave to Cantrell, and pictures of gifts Vappie gave to Cantrell.[27]  On or about July 18, 2023, a federal grand jury sitting in

---

[19] *Id*. at pp. 14–23.
[20] *Id*. at p. 24.
[21] *Id*.
[22] *Id*.
[23] *Id*. at pp. 25–29 (Counts 2–13).
[24] *Id*. at pp. 31–34 (Count 15).
[25] *Id*. at pp. 25–29 (Counts 3, 4, 6, 8, 9, & 11).
[26] *Id*. at pp. 34–42 (Counts 16, 17, & 18).
[27] *Id*. at p. 12.

the Eastern District of Louisiana issued a subpoena to Cantrell, which required the production of, among other things, communications between Cantrell and Vappie and documents concerning gifts that Vappie gave Cantrell, including "any pictures of any gifts or things of value provided to you by Jeffrey Vappie."[28]  The superseding indictment alleges that Cantrell produced documents and a sworn affidavit containing false information, in that the affidavit stated that all responsive documents in her possession had been produced and that she was unaware of any additional responsive documents. [29]  According to the superseding indictment, Cantrell appeared before a grand jury on June 28, 2024, during which she falsely testified that she had produced all records responsive to the July 18th subpoena, that she was unaware of additional records in her possession, custody, or control that had been withheld from the production, and that, to her knowledge, no responsive documents had been withheld from the production.[30]

In the instant Motion, the Government asserts that while Cantrell produced a photograph of a single diamond ring,[31] the superseding indictment alleges, and provides documentary evidence, that by June 11, 2022, Vappie had given Cantrell two rings – a small diamond ring and a larger gold ring.[32]  The Government claims that the gold ring includes the NOPD crescent and star logo, with the letters "NOPD" on the crescent, and that the ring resembles a gold ring that Vappie previously wore

---

[28] *Id.* at pp. 13 & 34 (citation modified).
[29] *Id.* at pp. 13 & 37–40.
[30] *Id.*
[31] R. Doc. 85-1 at p. 3.
[32] *Id.* at p. 4 (*citing* R. Doc. 34-1 at p. 32).

in an NOPD photograph.[33]  The Government contends that Vappie failed to produce any records related to the diamond ring in response to the subpoena served on him, and that, to date, neither Vappie nor Cantrell has acknowledged the existence of the gold NOPD ring or produced any evidence, including photographs, about it in response to the grand jury subpoenas.[34]  The Government asserts that overwhelming evidence indicates that Cantrell possessed both rings when she received the grand jury subpoena and that she continues to possess them.[35]  The Government points to a social media post by Cantrell showing her wearing the gold NOPD ring as early as December 2021, and other social media posts showing her wearing the gold NOPD ring in October 2025 and December 2025.[36]  The Government seeks to present, as evidence intrinsic to the charged crimes, information concerning the gold NOPD ring and Cantrell's continued possession and display of it. [37]  Alternatively, the Government provides notice of its intent to present this evidence as relevant "other acts" admissible under Federal Rule of Evidence 404(b).[38]

In its Notice, the Government also seeks to present at trial evidence of Cantrell's solicitation of campaign funds under false pretenses, misuse of those campaign funds, and subsequent filing of false campaign finance reports to the Louisiana Board of Ethics as relevant "other acts" admissible under Rule 404(b).[39] The Government asserts that Cantrell used campaign funds to purchase alcohol

---

[33] R. Doc. 85-1 at p. 5.
[34] *Id.*
[35] *Id.*
[36] *Id.* at pp. 5–7.
[37] *Id.* at p. 7.
[38] *Id.*
[39] *Id.* at pp. 8–20.

during the first months of the COVID-19 pandemic and mischaracterized their purpose on financial disclosures made to the Louisiana Board of Ethics, and that Cantrell also spent campaign funds to purchase personal clothing and concealed the personal nature of the expenditures by manufacturing a sham consulting arrangement.[40] The Government claims that between March 2020 and December 2020, after declaring a state of emergency on March 11, 2020 due to the pandemic, Cantrell purchased more than $9,000 worth of alcohol and characterized the transactions on her campaign disclosure as "food and beverage for supporters/donors," despite the absence of in-person campaign events during that time.[41] The Government avers that when an associate familiar with Cantrell's campaign and Cantrell's campaign accounts ("Associate A") confronted Cantrell about misusing public funds, Cantrell disregarded her warnings.[42] The Government further asserts that from 2017 through late 2022, Cantrell arranged for her campaign account to pay her hair stylist and entities under the stylist's control approximately $259,559 while Cantrell personally paid the stylist only $27,464.[43] The Government contends that social media photographs often showed Cantrell wearing clothing that matched items the stylist purchased using campaign funds, and the Motion includes photographs of the clothing websites and photographs of Cantrell wearing the clothing pictured.[44] The Government contends that Cantrell again disregarded

---

[40] *Id*. at p. 8.
[41] *Id*. at pp. 8–10.
[42] *Id*. at pp. 8 & 10–12.
[43] *Id*. at pp. 12–13 & 17–19.
[44] *Id*. at pp. 13–16.

Associate A's concerns about her misuse of campaign funds and subsequent coverup, and that Cantrell knew campaign funds could not be used to pay for her wardrobe due to annual state ethics training and her attendance at a campaign finance disclosure training through the Louisiana Ethics Administration Program on May 4, 2022.[45]

Cantrell opposes the Motion, asserting that the Government cannot prove beyond a reasonable doubt that the gold NOPD ring constitutes a "gift" under Louisiana law because Cantrell had Vappie's permission to wear it, but it was "always subject to being returned to Mr. Vappie upon request."[46]  Cantrell contends that she did not conceal the gold ring, and that she was openly and innocently wearing it when she appeared before the grand jury, when she made her grand jury production on June 28, 2024, and when she appeared for her arraignment.[47]  As such, Cantrell argues that the ring, and her failure to produce it, is not a similar "crime, wrong," or other offense and has no relevance in this case.[48]  Cantrell further asserts that evidence of her alleged misuse of campaign funds does not require the same intent required of the fraud charges in the superseding indictment, pointing out that the crimes charged in the superseding indictment concern public funds while her campaign funds are from private donors.[49]  Cantrell also claims that her campaign manager filed her campaign reports and was solely responsible for making

---

[45] *Id.* at pp. 8 & 19.
[46] R. Doc. 91 at pp. 7–8 (*citing* La. Civ. Code art. 1530).
[47] R. Doc. 91 at p. 8.
[48] *Id.* at p. 9.
[49] *Id.* at pp. 10–12 & 16.

expenditures, all of which were lawful.[50]  Cantrell points out that the Louisiana Ethics Board "found no inherent problem" in her heavy spending on an image consultant and investigated her spending on clothing and alcohol and brought no charges against her.[51]  Finally, Cantrell asserts that the probative value of the foregoing evidence is outweighed by the risk of unfair prejudice she will suffer and the inflammatory nature of the evidence.[52]

Vappie also opposes the Motion, asserting that the Government failed to present evidence showing that responsive documents existed or, if they did, that Vappie possessed them when he responded to the grand jury subpoena.[53]  Vappie contends that any such evidence would be extrinsic and irrelevant under Rule 404(b), as the charged conspiracy does not include any acts by Vappie regarding the grand jury.[54]  Vappie further asserts that admitting the campaign finance evidence would double or triple the length of trial, as Cantrell allegedly misused $270,162.05 in campaign funds while Vappie's alleged payroll fraud totals $5,909.92.[55]  Vappie argues that he will be prejudiced if the jury hears this evidence, as it will confuse the issues and waste the jury's time.[56]  Vappie points out that the Court will have to fashion jury instructions that explain campaign finance law, while simultaneously telling the jury that the defendants are not on trial for campaign finance violations.[57]

---

[50] *Id.* at pp. 13–14 & 16–20.
[51] *Id.* at pp. 13–16 & 17–18.
[52] *Id.* at pp. 20–22.
[53] R. Doc. 92 at pp. 1–3.
[54] *Id.* at pp. 3–4.
[55] *Id.* at p. 5.
[56] *Id.* at pp. 5–6.
[57] *Id.* at p. 6.

Vappie claims that he will seek severance under Rule 14 if this evidence is admitted under Rule 404(b).[58]

In response, the Government maintains that evidence of the gold NOPD ring is admissible as intrinsic evidence that the defendants knowingly continued their obstruction beyond the conduct referenced in the superseding indictment by withholding material responsive to a lawfully served grand jury subpoena.[59] The Government asserts that Louisiana donation law is irrelevant to the crimes charged in the superseding indictment.[60] The Government contends that even if Cantrell received the ring on a temporary basis, it was responsive to the subpoena because it was "jewelry," or "a thing of value," and it was provided to her by Vappie.[61] The Government claims that Cantrell's belief regarding whether the gold NOPD ring was responsive to the grand jury subpoena goes to the weight of the evidence, not its admissibility, and that Cantrell's "public flaunting of the ring" does not undermine its admissibility.[62] The Government further notes that Cantrell misconstrues the applicable legal standard. Finally, as to Cantrell's arguments, the Government contends that Cantrell's wearing of the ring was neither "open" nor "innocent" because she failed to disclose that she had this "jewelry" or "thing of value" that Vappie gave her to the grand jury.[63]

---

[58] *Id.*
[59] R. Doc. 94 at pp. 1–2.
[60] *Id.* at pp. 3–4.
[61] *Id.* at p. 4.
[62] *Id.* at p. 5.
[63] *Id.*

As to Vappie's arguments regarding the gold NOPD ring, the Government asserts that the Federal Rules of Evidence and the law of conspiracy undermine Vappie's legal arguments, while Cantrell's subpoena production undermines Vappie's factual claims.[64] The Government points out that a defendant can be convicted of a conspiracy without doing anything personally beyond knowingly joining an unlawful agreement, as long as one of the coconspirators committed an overt act to further the conspiracy.[65] The Government claims that it is well established in this Circuit that "where a conspiracy is charged, acts that are not alleged in the indictment may be admissible as part of the Government's proof."[66] The Government further points out that Cantrell's production of a photograph of a diamond ring and CashApp transaction records between Cantrell and Vappie, which Cantrell alleges concern the diamond ring, demonstrate that Vappie, too, possessed these records and withheld them from his grand jury production.[67]

As to the misuse of campaign funds, the Government asserts that another Section of this Court has already rejected the argument that a politician could not misuse campaign funds because they belonged to him.[68] While Cantrell argues that evidence regarding misuse of campaign funds is not relevant to her intent to commit the charged crimes, the Government asserts that the evidence is also relevant to

---

[64] *Id.* at p. 6.

[65] *Id.* at pp. 6–7 (*citing* Fifth Circuit Pattern Jury Instructions (Criminal Cases) (2024), § 2.15A (18 U.S.C. § 371); *United States v. Said*, Case No. 21-10588, 2023 WL 167213, at *3 (5th Cir. Jan. 12, 2023)).

[66] R. Doc. 94 at p. 7 (quoting *United States v. Watkins*, 591 F.3d 780, 785 (5th Cir. 2009)) (citation modified).

[67] R. Doc. 94 at pp. 8–9.

[68] *Id.* at pp. 10–11 (citing *United States v. Reed*, Crim. A. No. 15-100, 2015 WL 5944333, at *1 (E.D. La. Oct. 13, 2015) (Fallon, J.)).

Cantrell's knowledge, plan, motive, and absence of mistake.[69]  The Government maintains that in both the charged conduct and the extrinsic acts, Cantrell exploited her power and authority over people and funds to misuse proceeds for her benefit, and that she falsified documents to cover up her fraud.[70]  The Government maintains that the evidence satisfies the second prong of *Beechum* because it is probative of Cantrell's state of mind and has a similar pattern and temporal proximity to the charged conduct and the Court can use limiting instructions as needed during trial to avoid undue prejudice.[71]  The Government asserts that while a campaign manager may have signed the campaign finance reports, it was Cantrell who caused the purpose of the expenditures on those reports to be mischaracterized in order to avoid detection.[72]  The Government maintains that evidence of Cantrell's misuse of campaign funds is highly probative and that its presentation will not be unduly prejudicial.[73]  As to Vappie, the Government asserts that the possibility of a defendant seeking a severance is not a factor to determine evidence admissibility under Rule 404(b) and *Beechum*.[74]

## II.    LEGAL STANDARD

Federal Rule of Evidence 404(a)(1) prohibits the use of evidence "of any other crime, wrong, or act . . . to prove a person's character in order to show that on a

---

[69] R. Doc. 94 at p. 11 (*citing* R. Doc. 95-1 at p. 26).

[70] R. Doc. 94 at pp. 11–12.

[71] *Id*. at pp. 12–13.

[72] *Id*. at p. 13 (*citing* R. Doc. 85-1 at pp. 8–19).

[73] R. Doc. 94 at pp. 14–16.

[74] *Id*. at pp. 16–17.  The Government further maintains that Vappie will be unable to meet his burden in seeking a severance as a result of this issue.  Since any issue of a severance is not before the Court, the Court declines to address same in this Order and Reasons.

particular occasion the person acted in accordance with the character."[75]  Under Rule

404(b)(2), however, such evidence "may be admissible for another purpose, such as

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence

of mistake, or lack of accident."[76]  The Government bears the burden of proving that

the extrinsic evidence is relevant and admissible under Rule 404(b).[77]  The Court

> need not be convinced beyond a reasonable doubt that the defendant
> committed the extrinsic offense, nor need [the Court] require the
> Government to come forward with clear and convincing proof.   The
> standard for the admissibility of extrinsic offense evidence is that of rule
> 104(b): "the preliminary fact can be decided by the judge against the
> proponent only where the jury could not reasonably find the preliminary
> fact to exist."[78]

The admissibility of "other acts" evidence depends upon whether the evidence

is intrinsic or extrinsic to the crimes charged in the indictment.  As explained by the

Fifth Circuit, Rule 404(b)(1) "is designed to guard against the inherent danger that

the admission of 'other acts' evidence might lead a jury to convict a defendant not of

the charged offense, but instead of an extrinsic offense."[79]  As such, "[t]he phrase

'crime, wrong, or other act' includes only those acts that are 'extrinsic' to the crimes

charged in the indictment."[80]  Evidence intrinsic to the charged offense, however, "is

generally admissible so that the jury may evaluate all the circumstances under which

---

[75] Fed. R. Evid. 404(b)(1).

[76] Fed. R. Evid. 404(b)(2).

[77] *United States v. Valenzuela*, 57 F.4th 518, 521 (5th Cir. 2023) (quoting *United States v. Wallace*, 759 F.3d 486, 494 (5th Cir. 2014)).

[78] *United States v. Beechum*, 582 F.2d 898, 913 (5th Cir. 1978) (*quoting* 21 Wright & Graham, Federal Practice and Procedure: Evidence 5054, at 269 (1977)) (internal footnote omitted).

[79] *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2008) (quoting *United States v. Ridlehuber*, 11 F.3d 516, 521 (5th Cir. 1993)).

[80] *United States v. Holmes*, Crim. A. No. 23-229, 2025 WL 918701, at *2 (E.D. La. Mar. 26, 2025) (Vance, J.) (citing *United States v. Crawley*, 533 F.3d 349, 353–54 (5th Cir. 2008)).

the defendant acted."[81]   According to the Fifth Circuit, "other acts" evidence is intrinsic: (1) when it is inextricably intertwined with the charged offense; (2) when both acts are part of the same criminal episode; or (3) when the "other act" was a necessary preliminary step toward the completion of the charged crime. [82] Additionally, "[i]ntrinsic evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place, and to evaluate all of the circumstances under which the defendant acted."[83]   Notably, "where a conspiracy is charged, acts that are not alleged in the indictment may be admissible as part of the Government's proof, such as evidence of acts committed pursuant to a conspiracy and offered to prove the defendant's membership or participation in the conspiracy."[84]

If the challenged evidence is extrinsic to the charged offense, the Court must make a threshold determination regarding whether there is sufficient evidence to show that the defendant committed the "other act."[85]   According to the Fifth Circuit, "the Government must at least provide *some evidence* that the defendant committed the prior bad act." [86]   In other words, "the Government must provide evidence sufficient to allow a reasonable jury to find that the defendant committed the act."[87]

---

[81] *Sumlin*, 489 F.3d at 689 (quoting *United States v. Royal*, 972 F.2d 643, 647 (5th Cir. 1992)) (citation modified).

[82] *Crawley*, 533 F.3d at 354 (citing *Sumlin*, 489 F.3d at 689).

[83] *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (quoting *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996); *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989)) (citation modified).

[84] *United States v. Age*, 136 F.4th 93, 220 (5th Cir. 2025) (quoting *United States v. Watkins*, 591 F.3d 780, 785 (5th Cir. 2009); *United States v. Garcia Abrego*, 141 F.3d 142, 175 (5th Cir. 1998)) (citation modified).

[85] *Sumlin*, 489 F.3d at 691 (citing *United States v. Beechum*, 582 F.2d 898, 913 (5th Cir. 1978)).

[86] *United States v. Gonzalez-Lira*, 936 F.2d 184, 189–90 (5th Cir. 1991) (emphasis in original).

[87] *Id.* at 190.

If the proof is insufficient, the extrinsic evidence must be excluded as irrelevant.[88]  If, however, the Government satisfies this threshold requirement, the Court must evaluate the admissibility of the evidence under the two-step analysis set forth in *United States v. Beechum*.[89]  First, the Court determines whether the extrinsic evidence is relevant to an issue other than the defendant's character (*i.e.,* motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.).[90]  Under Federal Rule of Evidence 401, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."[91]  "The relevance of an extrinsic offense is a function of its similarity to the offense charged, and similarity must be determined with respect to the particular issue to which the extrinsic offense is addressed."[92]

Second, if the evidence is relevant for at least one of the foregoing permissible purposes, the Court "must determine whether, consistent with Rule 403, the evidence possesses probative value that is not substantially outweighed by its undue prejudice."[93]  The probative value of extrinsic evidence "is not an absolute; its value must be determined with regard to the extent to which the defendant's unlawful

---

[88] *Id.; Sumlin*, 489 F.3d at 691 (quoting *Beechum*, 582 F.2d at 913).

[89] *Sumlin*, 489 F.3d at 690–91 (citing *Beechum*, 582 F.2d at 911, 913).

[90] *United States v. Crawley*, 533 F.3d 349, 354 (5th Cir. 2008) (quoting *United States v. Sanders*, 343 F.3d 511, 518 (5th Cir. 2003)) (citation modified).

[91] Fed. R. Evid. 401.  *See United States v. Holmes*, Crim. A. No. 23-229, 2025 WL 918701, at *2 (E.D. La. Mar. 26, 2025) (*quoting* Fed. R. Evid. 401).

[92] *Holmes*, Crim. A. No. 23-229, 2025 WL 918701 at *2 (quoting *Beechum*, 582 F.3d at 911) (citation modified).

[93] *Crawley*, 533 F.3d at 354 (quoting *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007)) (citation modified).

intent is established by other evidence, stipulation, or inference."[94]  "The task for the court in its ascertainment of probative value and unfair prejudice under rule 403 calls for a commonsense assessment of all the circumstances surrounding the extrinsic offense."[95]  According to the Fifth Circuit, "this evaluation rests within the sound discretion of the trial judge."[96]  At the second step, this Court must consider the following four factors: (1) the Government's need for the extrinsic evidence; (2) the similarity between the extrinsic and charged offenses; (3) the amount of time separating the two offenses; and (4) the court's limiting instructions.[97]

Pertinent to the instant case, "[w]hen a conspiracy is alleged, the Fifth Circuit gives somewhat greater latitude in characterizing evidence as intrinsic."[98]  According to the Fifth Circuit, "[e]vidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about, how it was structured, and how the appellant became a member."[99]  "It is well established that where a conspiracy is charged, acts that are not alleged in the indictment may be admissible as part of the Government's proof."[100]  "Moreover, evidence of acts committed pursuant to a conspiracy and offered to prove the defendant's membership or participation in the conspiracy are not extrinsic

---

[94] *Beechum*, 582 F.2d at 914.

[95] *United States v. Valenzuela*, 57 F.4th 518, 522 (5th Cir. 2023) (quoting *Beechum*, 582 F.2d at 914) (citation modified).

[96] *Valenzuela*, 57 F.4th at 522 (quoting *Beechum*, 582 F.2d at 915) (citation modified).

[97] *United States v. Age*, 136 F.4th 193, 220 (5th Cir. 2025) (quoting *United States v. Smith*, 804 F.3d 724, 736 (5th Cir. 2015)) (citation modified).

[98] *United States v. Porter*, Crim. A. No. 12-198, 2013 WL 5673607, at *5 (E.D. La. Oct. 17, 2013) (Vance, J.) (citing *United States v. Girod*, 646 F.3d 304, 320 (5th Cir. 2011)).  *See United States v. Age*, Crim. A. No. 16-32, 2021 WL 6135570, at *4 (E.D. La. Dec. 29, 2021) (Ashe, J.), *aff'd* 136 F.4th 193 (5th Cir. 2025) (same).

[99] *United States v. Watkins*, 591 F.3d 780, 784 (5th Cir. 2009).

[100] *Id.* at 785.

evidence, i.e., evidence of 'other' acts, for purposes of Rule 404(b)."[101] "Acts committed in furtherance of the charged conspiracy are themselves part of the act charged."[102] As such, "evidence of such acts constitutes intrinsic evidence–that is, direct evidence of the charged conspiracy itself."[103]

### III. ANALYSIS

#### A. The Gold NOPD Ring

The Government seeks to admit at trial evidence regarding a gold NOPD ring, including photographs from Cantrell's Facebook account that were posted in 2021, 2022, and 2025, photographs exchanged between Cantrell and Vappie via WhatsApp in June 2022, a photograph of Vappie, and Cantrell's continued possession and display of the ring, arguing that the evidence is "intrinsic to the obstruction charged in the superseding indictment."[104] The Government claims that: (1) Vappie and Cantrell each made an incomplete return to the grand jury that omitted the ring and other evidence; (2) each defendant gave false affidavits to the grand jury certifying completeness of their respective productions; (3) Cantrell testified falsely to the grand jury about the completeness of her production; and (4) each defendant failed to disclose the ring even after the grand jury issued the superseding indictment.[105] The Government asserts that the evidence and photographs of Cantrell wearing the gold NOPD ring show that her obstruction was knowing and not accidental, as she chose

---

[101] *United States v. Garcia Abrego*, 141 F.3d 142, 175 (5th Cir. 1998) (quoting *United States v. Krout*, 66 F.3d 1420, 1431 (5th Cir. 1995)) (citation modified).
[102] *Garcia Abrego*, 141 F.3d at 175.
[103] *Id.*
[104] R. Doc. 85-1 at pp. 4–7 & 22.
[105] *Id*. at p. 22.

to display it prominently and publicly. [106]   The Government argues that the withholding of critical evidence is inextricably intertwined with and completes the story of Vappie and Cantrell's conspiracy to obstruct justice and Cantrell's "individual obfuscatory efforts alleged in Counts 14, 16, 17, and 18."[107]  The Government further asserts that Cantrell's actions after the August 15, 2025 superseding indictment are a continuation of the defendants' obstructive conduct and their criminal conspiracy, and are therefore part of a single criminal episode of obstruction and further evidence of the perjury alleged in the superseding indictment.[108]

At the outset, the Court notes that its analysis of the admissibility of the Facebook photographs, the photographs exchanged via WhatsApp, and Vappie's photograph as either intrinsic or extrinsic evidence assumes that the photographs will be authenticated pursuant to Federal Rule of Evidence 901 with respect to what the Government claims they are.  The Court's ruling is premised on the Government satisfying its burden to show the authenticity of the evidence and photographs.[109]

The Court finds that evidence regarding the gold NOPD ring, including the photographs of Cantrell wearing the ring, is admissible as intrinsic evidence pursuant to Rule 404(b).  Such evidence is inextricably intertwined with and/or part of the same criminal episode as the crimes charged in Counts 1, 14, 16, 17, and 18 of the superseding indictment, which concern Cantrell and Vappie's alleged conspiracy

---

[106] *Id.*

[107] *Id.* at p. 23.

[108] *Id.*

[109] *See United States v. Dominick*, Crim. A. No. 24-44, 2025 WL 1593077, at *4 (E.D. La. June 5, 2025) (Africk, J.).

to defraud the city and obstruction of a grand jury proceeding that was investigating their alleged violations of federal criminal laws.[110]  According to the superseding indictment, Vappie and Cantrell began a romantic relationship in October 2021, but hid their relationship to maximize their time together.[111]  Vappie and Cantrell were served with grand jury subpoenas on July 14, 2023 and July 18, 2023, respectively, both of which required the production of, among other things, correspondence with each other, gifts Vappie gave to Cantrell, and pictures of gifts that Vappie gave to Cantrell.[112]  The Government has alleged in Counts 1, 14, 16, and 17 that Cantrell concealed and withheld documents responsive to the grand jury subpoena, including correspondence with Vappie and "things of value" that Vappie gave her, that Cantrell provided an affidavit falsely stating that she had not withheld responsive documents, and that Cantrell falsely testified before a grand jury that she had produced all responsive documents.[113]  The Government has also alleged in Counts 1, 14, and 15 that Vappie lied about the nature of his relationship with Cantrell when he was interviewed by special agents with the FBI on July 14, 2023. [114]  Finally, the Government has alleged in Counts 1, 14, 16, and 17 of the superseding indictment that Cantrell and Vappie used WhatsApp to communicate with each other, that they exchanged over 15,000 messages between February 2022 and October 2022, that Cantrell activated the "disappearing messages" feature for her WhatsApp

---

[110] R. Doc. 34 at p. 36, ¶ 152.
[111] *Id*. at pp. 2–3, 14–15, & 18.
[112] *Id*. at pp. 12–13.
[113] *Id*. at pp. 16, 24, 31, 35–36, & 37–42.
[114] *Id*. at pp. 12, 16, 24, 31, & 34.

communication thread with Vappie in December 2022, causing all new messages between them to disappear after 24 hours, and that Cantrell manually deleted thousands of WhatsApp messages with Vappie between October 2022 and January 2023 to hide their relationship.[115]

Evidence regarding the gold NOPD ring is inextricably intertwined with Counts 1, 14, 15, 16, 17, and 18 of the superseding indictment because it confirms the relationship between Cantrell and Vappie and confirms that Vappie made false statements to FBI agents in July 2023 when he told them he had never had a romantic relationship with Cantrell.[116] The evidence is also inextricably intertwined with the Government's allegations in those counts that Vappie and Cantrell withheld documents from their grand jury production in order to hide their relationship and their alleged scheme to defraud.  By way of one example, there are two WhatsApp messages sent by Cantrell to Vappie on June 11, 2022, one depicting a diamond ring on the fourth finger of her left hand with the message, "Hey did you tell [redacted] you put a ring on it? [emoji]," and the other depicting the gold NOPD ring on the fourth finger of her right hand with the message, "Two [emoji] [emoji]."[117]  These messages support that Vappie gave Cantrell both rings.  Cantrell concedes that she wore the gold NOPD ring "with permission of Mr. Vappie . . . with the condition, and understanding between them, that the ring was not a permanent transfer, or gift,

---

[115] *Id*. at pp. 7, 14, 17, 20–23, 30–31, 35–36, & 39–40.  The Government further alleges that Cantrell falsely stated in her Affidavit to the grand jury that she did not "implement" a setting that deleted all sent and received WhatsApp messages.  *See id.*
[116] *See* R. Doc. 34 at pp. 31–34.
[117] R. Doc. 85-1 at p. 4.

and was being worn with the revocable condition that the ring was always subject to being returned to Mr. Vappie upon request, and, thus, not a delivered gift by law."[118] While Cantrell disputes that the gold NOPD ring was a "gift" under Louisiana Civil Code article 1530,[119] Cantrell construes the subpoena too narrowly.  The subpoena issued to Cantrell requested, "[a]ll documents, records, and/or correspondence concerning any gift *or thing of value*, including, but not limited to meals, *jewelry*, clothing, and political (*i.e.*, campaign) donations provided to you by Jeffrey Vappie. *This request expressly includes any pictures of any such gifts or things of value* provided to you by Jeffrey Vappie[.]"[120]  In its Motion, the Government asserts that the grand jury subpoena issued to Vappie included an identical provision requiring him to produce "[a]l documents, records and/or correspondence concerning any gift *or thing of value* you provided to LaToya Cantrell, including . . . *jewelry*.  This request expressly includes pictures of any such gifts *or things of value* provided by you to LaToya Cantrell."[121]  The Court finds that the gold NOPD ring is clearly a "thing of value" as contemplated by the grand jury subpoenas.  According to the Government, Cantrell produced the diamond ring to the Government for inspection, but Vappie failed to produce any records related to the diamond ring, and neither Vappie nor

---

[118] R. Doc. 91 at p. 7.

[119] *Id.* at pp. 7–8.  Article 1543 concerns the nullity of a donation inter vivos and provides that, "[a] donation inter vivos is null when it is made on a condition the fulfillment of which depends solely on the will of the donor."  La. Civ. Code art. 1530.  The Court points out that Article 1543 provides that, "[t]he donation inter vivos of a corporeal movable may also be made by delivery of the thing to the done without any other formality."  La. Civ. Code art. 1543.

[120] R. Doc. 34 at p. 35 (emphasis added).  The subpoenas were provided to the Court following the oral argument in this matter.

[121] R. Doc. 85-1 at p. 3.

Cantrell have acknowledged the existence of the gold NOPD ring.[122]  As such, this evidence is "part of the same criminal episode" set forth in Counts 1, 14, 15, 16, 17, and 18 of the superseding indictment.  The Court further finds that evidence regarding the gold NOPD ring "completes the story" of Vappie and Cantrell's conspiracy to obstruct justice and Cantrell's efforts to obstruct the grand jury proceeding by withholding communications and documents responsive to the grand jury subpoenas.  To the extent Vappie claims that evidence regarding the gold NOPD ring is inadmissible because the Government has no proof that he withheld any documents,[123] that argument addresses the strength of the Government's case, not the preliminary determination of admissibility of evidence under Rule 404.  Moreover, the Court has concluded that evidence regarding the gold NOPD ring is intrinsic to Count 15, in which Vappie is charged with making false statements to the FBI in July 2023 regarding the nature of his relationship with Cantrell.[124]

In concluding that evidence regarding the gold NOPD ring constitutes intrinsic evidence under Rule 404(b), the Court has taken into account the temporal proximity of the photographs to the crimes charged.  The Facebook photographs were purportedly posted on December 22, 2021, January 5, 2022, October 2, 2025, and December 2025, depicting Cantrell wearing the gold NOPD ring shortly after her romantic relationship with Vappie began in October 2021, before and after she received the grand jury subpoena on July 18, 2023, and after the superseding

---

[122] *Id.* at p. 5.
[123] R. Doc. 92 at pp. 2–5.
[124] *See* R. Doc. 34 at pp. 31–34.

indictment was filed on August 15, 2025. The same is true of the WhatsApp photographs depicting Cantrell wearing the two rings on June 11, 2022. While the photograph of Vappie is from "a 2000-2005 book of NOPD officers,"[125] it connects the ring to Vappie. As such, the Court is satisfied that the Facebook photographs, the WhatsApp photographs, and the photograph of Vappie are intrinsic to the offenses charged in Counts 1, 14, 15, 16, 17, and 18 of the superseding indictment because they complete the story of the charged crimes, not just the story of the investigation, and prove the immediate context of the events.[126]

Alternatively, even if evidence regarding the gold NOPD ring is not intrinsic, the Court finds that it is admissible as extrinsic "other acts" evidence under Rule 404(b). The Government has shown, by a preponderance of the evidence, that Cantrell possessed and wore the gold NOPD ring on several occasions both before and after the issuance of the superseding indictment.[127] The evidence also satisfies both prongs of the *Beechum* test, as it is relevant to Cantrell's intent, knowledge, and absence of mistake, and the probative value of the evidence is not substantially outweighed by its undue prejudice.[128] Accordingly, the Court finds that evidence regarding the gold NOPD ring is admissible at trial, either as intrinsic evidence or, alternatively, as extrinsic evidence under Fed. R. Evid. 404(b)(2).

---

[125] R. Doc. 85-1 at p. 5, n.2.

[126] *See United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010).

[127] *United States v. Sumlin*, 489 F.3d 683, 691 (5th Cir. 2008) (citing *United States v. Beechum*, 582 F.2d 898, 913 (5th Cir. 1978)).

[128] *See Sumlin*, 489 F.3d at 690–91 (citing *Beechum*, 582 F.2d 898, 911, 913 (5th Cir. 1978)); *United States v. Crawley*, 533 F.3d 349, 354 (5th Cir. 2008).

### B. Cantrell's Misuse of Campaign Funds

The Government further asserts that evidence of Cantrell's solicitation and subsequent use of campaign funds to purchase alcohol and clothes for her personal use, and her subsequent attempts to conceal the purpose of those purchases in filings with the Louisiana Board of Ethics, is admissible under Fed. R. Evid. 404(b) as extrinsic evidence of "other wrongs."[129]  The Government asserts that this evidence satisfies the first prong of the *Beechum* test because it bears on Cantrell's intent, knowledge, and plan regarding the charged crimes and is relevant to her motive.[130] The Government contends that this evidence also establishes a pattern of conduct and demonstrates an absence of mistake, as Cantrell is charged with a conspiracy in which she exploited her power and authority for her personal benefit while falsifying documents to hide the true nature of those expenses.[131]  The Government claims that, just as Cantrell instructed her subordinates to book travel for Vappie and she falsely certified it as being business-related, Cantrell also misused campaign funds for personal expenses and falsely characterized it as being for "supporters/donors" and "consulting."[132]  The Government points out that someone "familiar with her campaign and the Cantrell campaign accounts," referred to as "Associate A," warned Cantrell against using campaign funds for personal reasons, including travel with

---

[129] R. Doc. 85-1 at pp. 25–28.
[130] *Id.* at p. 26.
[131] *Id.*
[132] *Id.*

Vappie, alcohol, and clothing, and that the incidents involve the same witnesses in overlapping time frames.[133]

The Government further asserts that evidence of Cantrell's campaign fund solicitation, misuse, and coverup satisfies *Beechum*'s second prong and that all four factors weigh in favor of admitting the evidence.[134]  As to the first factor, the Government claims that the evidence is necessary because Cantrell's intent will be the crucial issue regarding her role in the fraud conspiracy, as the jury will need to decide whether her actions, including authorizing Vappie's travel reimbursement, were the result of oversight or simple mistake.[135]  Regarding the second factor, the Government contends that the extrinsic evidence and the charged conduct are similar because they both concern Cantrell's pattern of attempting to conceal prior fraudulent conduct.[136]  As for the third factor, the Government asserts that the events occurred in close temporal proximity, as Cantrell misused campaign funds to purchase alcohol in 2020 and 2021, she misused campaign funds to pay her stylist between 2017 and 2022, and the defendants' fraudulent conduct in the superseding indictment and their subsequent attempts to hide it began in late 2021 and continued at least through 2025.[137]  Regarding the fourth factor, the Government avers that a limiting instruction can eliminate the possibility that the jury will consider the evidence of Cantrell's campaign fund misuse for an impermissible purchase.[138]  As

---

[133] *Id*. at pp. 8, 10–12, 17–19, & 26.
[134] *Id*. at p. 27.
[135] *Id*.
[136] *Id*.
[137] *Id*.
[138] *Id*. at pp. 27–28.

such, the Government argues that the extrinsic evidence is not unduly prejudice when compared with its probative value and should be admitted at trial.[139]

In response, Cantrell argues that the Government has no need for this evidence because it is already described in the superseding indictment.[140]  Cantrell also asserts that the evidence is not relevant to the issue of intent because the crimes charged in the superseding indictment require a different intent from the alleged misuse of campaign funds.[141]  Cantrell also claims that her campaign manager filed her campaign reports and was solely responsible for making expenditures, all of which were lawful.[142]  Finally, Cantrell asserts that the probative value of the evidence is outweighed by the risk of unfair prejudice she will suffer and the inflammatory nature of the evidence.[143]

The Court agrees with the defendant that evidence regarding Cantrell's alleged misuse of campaign funds is not admissible extrinsic evidence under Rule 404(b)(2), and instead constitutes inadmissible character evidence.  Even assuming, without deciding, that the Government can satisfy the threshold requirement of proving that Cantrell actually misused campaign funds by spending them on clothing and alcohol,[144] the evidence fails both prongs of the *Beechum* test for admissibility.[145]

---

[139] *Id*. at p. 28.

[140] R. Doc. 91 at pp. 10 & 12.

[141] *Id*. at pp. 10–12.

[142] *Id*. at pp. 13–14 & 16–20.

[143] *Id*. at pp. 20–22.

[144] *See United States v. Sumlin*, 489 F.3d 683, 691 (5th Cir. 2008) (citing *United States v. Beechum*, 582 F.2d 898, 911, 913 (5th Cir. 1978)).  The Court notes that the Government has failed to direct the Court to evidence indicating that the Louisiana Board of Ethics made any findings or conclusions regarding Cantrell's alleged misuse of campaign funds or imposed any sanctions based upon her actions.

[145] *Sumlin*, 489 F.3d at 690–91 (citing *Beechum*, 582 F.2d at 911, 913).

As to the first prong, whether the extrinsic evidence is relevant to an issue other than the defendant's character, the Government claims that that the evidence bears on Cantrell's intent, knowledge, and plan regarding the charged crimes, is relevant to her motive, establishes a pattern of conduct, and demonstrates an absence of mistake.[146]  The Court disagrees.

The Court recognizes that the Fifth Circuit has held that, "[w]here, as here, a defendant enters a plea of not guilty in a conspiracy case, the first prong of the *Beechum* test is satisfied."[147]  The Fifth Circuit reasoned that, "where the prior offense involved the same intent required to prove the charged offense, that prior offense is relevant and we are required only to consider whether the requirements of Rule 403 are met under *Beechum*'s second prong."[148]  As previously discussed, Cantrell is charged with conspiracy to defraud the City of New Orleans and the NOPD, wire fraud, conspiracy to obstruct justice, obstruction of justice, and making false declarations before a grand jury, all in an alleged effort to conduct and conceal a romantic relationship and payroll fraud.[149]  The crimes of wire fraud and obstruction of justice require the specific intent to defraud,[150] conspiracy requires knowledge of the unlawful purpose of the agreement and joining it willfully with the

---

[146] R. Doc. 85-1 at p. 26.

[147] *United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009) (citing *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996)).

[148] *Cockrell*, 587 F.3d at 679 (citing *Broussard*, 80 F.3d at 1040).

[149] R. Doc. 34.

[150] *See United States v. Fisch*, 851 F.3d 402, 407 (5th Cir. 2017) (recognizing that specific intent to obstruct justice is an element of obstruction of justice under 18 U.S.C. § 1503); *United States v. Brown*, 459 F.3d 509, 518–519 (5th Cir. 2006) ("Violation of the wire-fraud statute requires the specific intent to defraud, i.e., a conscious knowing intent to defraud; however, specific intent to defraud need not be charged in the indictment.") (citation modified).

intent to further the unlawful purpose, and making false declarations before a grand jury requires knowingly making a false statement.  The Government offers no information regarding the intent required to prove the misuse of campaign finances under Louisiana law.  Further, the Fifth Circuit has held that, "[w]hether evidence of an extrinsic offense is relevant to the issue of intent—as opposed to being inadmissible character evidence—is determined by comparing the defendant's state of mind in perpetrating the respective offenses."[151]  Here, the Government fails to address the fact that it has alleged that Cantrell conspired with Vappie to commit payroll fraud, wire fraud, and obstruction of justice in an effort to conduct and conceal a romantic relationship, and that it now claims that Cantrell misused campaign funds for reasons seemingly unrelated to her relationship with Vappie.

The Government also fails to explain how evidence regarding Cantrell's alleged misuse of campaign funds and her submission of financial disclosures to the Louisiana Board of Ethics would make a fact that is "of consequence in determining" her guilt in this case more or less probable.[152]  The Court finds that Cantrell's alleged misuse of campaign funds for personal expenses is simply not relevant to her alleged conspiracy, wire fraud, and obstruction of justice charges.  The fact that the same person, "Associate A," allegedly expressed concern regarding Cantrell's expenditures and travel expenses does not change the Court's analysis.  The Court agrees with

---

[151] *United States v. Crawley*, 533 F.3d 349, 354 (5th Cir. 2008) (citing *United States v. Gordon*, 780 F.2d 1165, 1173–74 (5th Cir. 1986) ("A finding that the offenses involved the same state of mind renders the extrinsic offense relevant to an issue other than character because it lessens the likelihood that the defendant acted with lawful intent in connection with the charged offense.")).

[152] Fed. R. Evid. 401.  *See United States v. Holmes*, Crim. A. No. 23-229, 2025 WL 918701, at *2 (E.D. La. Mar. 26, 2025) (*quoting* Fed. R. Evid. 401).

Cantrell that this evidence bears only as to Cantrell's character, which is prohibited under Rule 404(b)(1).

Even if  the Court were to find the evidence relevant to a trait other than Cantrell's character, and thus satisfying the first prong of the *Beechum* test, the Court finds that the probative value of the evidence regarding Cantrell's alleged misuse of campaign funds is substantially outweighed by its undue prejudice to Cantrell and Vappie and, therefore, fails the second prong of the *Beechum* analysis. While the Fifth Circuit has  outlined several factors for the Court to consider in the second prong of such an analysis, it has also made clear that,

> The task for the court in its ascertainment of probative value and unfair prejudice under rule 403 calls for a commonsense assessment of all the circumstances surrounding the extrinsic offense. . . "No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making a decision of this kind under rule 403."[153]

The Court agrees with Vappie that introducing evidence of Cantrell's alleged misuse of campaign funds will add several days to the length of this trial and will likely confuse the jury regarding the crimes they will be charged with deciding.  As Vappie points out, campaign finance laws are complicated and Cantrell's alleged misuse of campaign funds totaling over $270,000 dwarfs Vappie's alleged payroll fraud of approximately $12,000.[154]  This will likely create the very real potential of

---

[153] *United States v. Beechum*, 582 F.2d 898, 914 (5th Cir. 1978) (*quoting* Federal Rule of Evidence 404(b) advisory committee's note to 1972 proposed rules).

[154] R. Doc. 92 at pp. 1 & 5 (*citing* R. Doc. 85 at pp. 9–10 & 13; R. Doc. 34 at pp. 26–29).  The Court notes that while Vappie cites "R. Doc. 85 at pp. 9–10," this is likely a typographical error whereby Vappie intended to cite to R. Doc. 85-1, since R. Doc. 85 is only two pages long.  The Court further notes that while Vappie claims that Cantrell allegedly misused $27,0162.05 in campaign funds and that his alleged payroll fraud amounted to $5,909.92 (R. Doc. 92 at p. 5), the Government has alleged that

hearing a "trial within a trial"—and one that will be complex and involve a completely separate area of law, thus raising the potential for jury confusion.   Cantrell additionally contends that the introduction of the evidence of the alcohol and personal stylist payments would be inflammatory,[155] as the jurors may believe that Cantrell consumed the champagne, beer, wine, and alcohol herself, believe she is "of low character for doing so, and look down on her for that."[156]  The Court finds similarly, and additionally that Cantrell's thousands of dollars in purchases of Veuve Clicquot champagne could inflame the jury conversely—by evidencing a public official out-of-touch with ordinary citizens of this community.

The Court further finds that a majority of the four factors considered within the context of the second prong of the *Beechum* analysis weigh against the admissibility of the evidence.[157]  The Government has not demonstrated a need for the extrinsic evidence, as Cantrell's intent in allegedly misusing campaign funds is not relevant to her intent in conspiring to commit fraud and obstruct justice to conceal a romantic relationship.  The charged offenses were allegedly committed to maintain and conceal a romantic relationship, while campaign funds were allegedly misused

---

Cantrell used campaign funds to purchase "more than $9,000 worth of alcohol" in 2020, over $1,500 of champagne alone in 2021, and to pay a stylist "approximately $259,559." R. Doc. 85-1 at pp. 9, 10, & 13.  These amounts total $270,059.92.  According to the Court's calculation, the Government has alleged in the superseding indictment that Vappie received a total of $12,416.99 through his alleged payroll fraud.  R. Doc. 34 at pp. 26–29.

[155] R. Doc. 91 at p. 20.

[156] *Id.* at p. 21.

[157] *See United States v. Age*, 136 F.4th 193, 220 (5th Cir. 2025) (quoting *United States v. Smith*, 804 F.3d 724, 736 (5th Cir. 2015)) (citation modified) ("At [the second *Beechum*] step, this Court considers four factors: (1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions.").

for personal reasons. According to Cantrell, the campaign funds were used to pay a stylist for "personal and mental improvement, such as physical appearance; and, favoring donors and voters, and looking better doing so."[158]  No evidence has been introduced that the misuse of the campaign funds for the personal stylist or for alcohol fueled the defendants' personal relationship.  Thus, the Court finds that there is a lack of similarity between the charged offenses and Cantrell's alleged misuse of campaign funds.  While the crimes charged in the superseding indictment allegedly occurred at the same time as Cantrell's misuse of campaign funds, the Court finds that a limiting instruction regarding campaign finance law will not cure the unfair prejudice, confusion of issues, and undue delay caused by the admissibility of this extrinsic evidence.  Accordingly, the Court finds that the extrinsic evidence concerning Cantrell's alleged misuse of campaign funds fails the *Beechum* test and is not admissible under Fed. R. Evid. 404(b)(2).[159]

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Government's Motion to Admit Intrinsic Evidence or, Alternatively, Notice of Intent to Introduce "Other Act" Evidence Pursuant to Rule 404(b) of the Federal Rules of Evidence[160] is **GRANTED in part and DENIED in part.**  The Motion is **GRANTED** to the extent that the Government seeks to introduce evidence regarding a gold NOPD ring, and such evidence is admissible at trial subject to the Government establishing the

---

[158] R. Doc. 91 at p. 21.
[159] As with any other preliminary matter, the Court's ruling is narrow. It does not prohibit introduction of relevant evidence for a legitimate purpose or if a defendant "opens the door."
[160] R. Doc. 85.

authenticity of the evidence pursuant to Federal Rule of Evidence 901.  The Motion is **DENIED** to the extent that the Government seeks to introduce evidence regarding Cantrell's alleged misuse of campaign funds.

New Orleans, Louisiana, July 7, 2026.


**WENDY B. VITTER**
**United States District Judge**